UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAREY BRENNAN,<br><br>                    Plaintiff,<br><br>vs.<br><br>OPUS BANK, a California corporation; and STEPHEN H. GORDON,<br><br>                    Defendants. | NO.  2:13-cv-00094-RSM<br><br>ORDER ON DEFENDANTS' MOTIONS TO DISMISS |

## I.  INTRODUCTION

This matter comes before the Court on Defendants Opus Bank and Stephen Gordon's Motions to Dismiss. Dkt. ## 9, 12. Plaintiff Carey Brennan's employment with Opus Bank ended in March 2012. He brought several claims against Opus Bank and its CEO, Stephen Gordon, related to his employment agreement including breach of contract and wrongful termination. Defendants Opus Bank and Gordon moved to dismiss Plaintiff's complaint in favor of arbitration pursuant to a binding arbitration clause. For the reasons that follow, the Court grants Defendants' motions to dismiss in favor of arbitration.

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 1

## II. BACKGROUND

Defendant Opus Bank is a California-chartered commercial bank that was established on September 30, 2010, following its conversion from Bay Cities National Bank on that same day. Dkt. # 1, ¶ 3.23. Defendant Stephen Gordon was hired as Opus Bank's CEO, while Plaintiff Carey Brennan was hired as Executive Vice President and Managing Director of Corporate Development. *Id.* at ¶ 3.24. Gordon and Brennan, along with three other executives, comprised Opus Bank's senior management team. *Id.*

**A. Relevant Provisions of The Employment Agreement**

Brennan signed the Opus Bank Employment Agreement ("Employment Agreement") in late September 2010. *Id.* at ¶ 3.33. The Employment Agreement had been approved by the Board of Directors of Opus Bank as well as the Federal Deposit Insurance Corporation (FDIC). *Id.* at ¶¶ 3.31–3.32. The four other members of Opus Bank's senior management team likewise signed their own employment agreements, all of which were written from the same template. *Id.* at ¶¶ 3.26, 3.33; *Id.* at Ex. 1, 5.

Under Section 9(c) of the Employment Agreement, an employee has the right to terminate his employment when that termination is with "good reason." *Id.* at Ex. 4. Section 9(b)(ii) defines "good reason" as including such events as a material change in the Employee's function, duties, or responsibilities with Opus Bank, resulting in substantially lesser responsibility without the consent of the employee. *Id.* Section 9 provides that if Opus Bank fails to fix the problem within 30 days of the employee's Notice of Termination with Good Reason, the employee is entitled to a severance payment and continued benefits for a defined period of time. *Id.*

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 2

Section 16 of the Employment Agreement (the "Arbitration Clause"), titled "Dispute Resolution Procedures" states that binding arbitration is the sole forum for adjudication of controversies or claims (except those for equitable relief) arising out of the Employment Agreement or the employee's employment or termination of employment with Opus Bank. *Id.* at ¶ 3.3; *Id.* at Ex. 4. Section 16 also states that such claims shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association. *Id.* at Ex. 4.

**B. The Events Leading Up to Brennan's Exit from the Company; Brennan's Exit**

As of March 2012, Brennan had doubts about the basis on which Opus Bank was making statements to potential stock purchasers about Opus Bank's projected results. *Id.* at ¶ 3.85. Brennan also felt he was being excluded from activities he had been hired to perform. *Id.* at ¶ 3.114. For example, there was a dispute as to the handling of an employment matter concerning Jan Schrag, a Senior Vice President, whose termination of employment resulted in her bringing a wrongful termination claim against Opus Bank that was later settled. *Id.* at ¶¶ 3.101–3.114.

Brennan voiced his concerns via email to other members of the senior management team (not including Gordon) and their outside counsel about potentially misleading or inaccurate facts being communicated to potential investors. *Id.* at ¶¶ 3.86–3.93. A chain of emails among Gordon, Brennan, and Donald Royer, Opus Bank's general counsel, were exchanged. *Id.* at ¶¶ 3.98.

On March 19, 2012, Brennan sent Gordon and the other members of the Board of Directors a notice of Termination with Good Reason. *Id.* at ¶ 3.119.  Brennan claimed that

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 3

the "scope and significance" of his duties had "materially eroded" without his consent, and that his duties had "materially changed and diminished." *Id.*

Opus Bank responded through Royer, who asserted that Brennan did not have "good reason" to terminate his own employment, and notified Brennan that he had been placed on "administrative investigatory suspension." *Id.* at ¶ 3.124. An independent investigation—the neutrality of which Brennan disputes—was conducted by attorney Thomas Klein. *Id.* at ¶¶ 3.125–3.127. Klein concluded that Brennan did not have good reason to terminate his employment, nor did Opus Bank have cause to terminate Brennan's employment. *Id.* at ¶ 3.128. Opus Bank accepted these findings, and notified Brennan that the Board was now recognizing his "voluntary resignation" from Opus Bank without "good reason." *Id.* at ¶ 3.129.

Brennan then filed a complaint against Opus Bank and Gordon, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, tortuous wrongful termination in violation of public policy, and violations of California and Washington state law. Opus Bank moved to dismiss the complaint in favor of binding arbitration pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(3) (improper venue), 12(b)(6) (failure to state a claim), the Federal Arbitration Act ("FAA"), and Brennan's undisputed agreement to arbitrate pursuant to the rules of the American Arbitration Association ("AAA"). Defendant Gordon moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, or in the alternative for the same reasons presented by Opus Bank: namely, lack of subject matter jurisdiction and improper venue given Brennan's agreement to resolve all claims through binding arbitration. In the event the Court does not dismiss Brennan's complaint without prejudice, both Defendants request

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 4

that the Court order a stay of this action until arbitration is conducted and concluded. Brennan challenges the validity of the Arbitration Clause. He contends that this Court, and not the arbitrator, must determine whether the Arbitration Clause is unconscionable. As discussed below, the Court finds that dismissal under Rule 12(b)(3) in favor of arbitration is warranted.

### III. DISCUSSION

**A. Legal Standard**

Federal Rule of Civil Procedure 12(b)(3) provides for dismissal based on improper venue. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk v. Alberto-Culver*, 417 U.S. 506, 519 (1974). Motions to enforce forum selection clauses may be brought under Rule 12(b)(3). *Argueta*, 87 F.3d at 324. When a motion to enforce a forum selection clause is brought, the plaintiff carries the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Further, "[u]nder the . . . standard for resolving motions to dismiss based on a forum selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis." *Argueta*, 87 F.3d at 324.

**B. Analysis**

When the FAA governs a contract, federal law controls the issue of arbitrability and preempts conflicting state law. *Southland Corp.*, 465 U.S. at 12, 15–16 (1984) ("Federal law in the terms of the [FAA] governs that issue [of arbitrability] in either state or federal court."). Plaintiff appears to argue that the employment agreement is subject to both the

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 5

FAA and the California Arbitration Act. Dkt. # 28, p. 6. Because the FAA in fact preempts state law, it is an important preliminary matter to determine whether the FAA governs this employment agreement. The Court turns first to the issue of preemption and then to the issue of arbitrability.

   1. Preemption

The FAA widely compels judicial enforcement of written arbitration agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). Enacted in response to the historical hostility of American courts toward arbitration agreements, *id.*, the FAA is broad in its scope: it governs all arbitration contracts that "evidenc[e] a transaction involving [interstate] commerce." Federal Arbitration Act, 9 U.S.C. § 2 [hereinafter FAA]. This threshold is met when a contract "affect[s] commerce" or concerns a transaction that ultimately involves interstate commerce. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995).

The Supreme Court interprets the language of the FAA as an expression of "Congress' intent to 'exercise [its] commerce power to the full.'" *Circuit City*, 532 U.S. at 115 (quoting *Allied-Bruce*, 513 U.S. at 277). Parties need not have contemplated that the agreement would have an effect on interstate commerce at the time it was formed, so long as the contract does, in fact, affect interstate commerce. *Allied-Bruce*, 513 at 278. In addition, the scope of the FAA is not limited to commercial contracts; it covers employment contracts as well. *See Circuit City*, 532 U.S. at 119 (holding that FAA § 1, which excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," is properly interpreted to exclude

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 6

from the FAA only employment contracts for transportation workers, not all employment contracts).

The contract between Defendant Opus Bank and Brennan is governed by the FAA because it is a non-transportation employment contract that involves and affects interstate commerce. Opus Bank is a California-chartered company that was established with the "vision" to become a "diversified super regional community bank" located in the Western region (California, Arizona, Nevada, Oregon, and Washington). Dkt. # 1, ¶¶ 3.11, 3.17. Plaintiff is a Washington resident. Dkt. # 1, Ex. 4. In the contract, the parties state that Brennan would reside in Washington and be compensated by Opus Bank for expenses resulting from his travel between Washington and his "place of work" in California. *Id.*

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 338 U.S. 395 (1967), the Supreme Court held that a "consulting agreement" between a Maryland company and a New Jersey company wherein the New Jersey company was to "furnish advise and consultation" to the Maryland company, "clear[ly]" evidenced a transaction in interstate commerce. *Id.* at 397, 401. An agreement between a California company and a Washington resident wherein the Washington resident agrees to serve as an Executive Vice President for the California company similarly evidences such a transaction. *See also Circuit City*, 532 U.S. at 109–110 (finding the FAA governs an arbitration agreement between a Circuit City employee in California and Circuit City). This employment agreement satisfies the "interstate commerce" requirement of the FAA. Thus, the FAA governs this agreement.

2. Arbitrability

Whether a dispute as to arbitrability should be resolved by the court or an arbitrator depends upon whether the parties agreed to delegate that power to the arbitrator. *First*

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 7

*Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995). Unless parties "clearly and unmistakably" delegate that power to an arbitrator, arbitrability is for the court, not the arbitrator, to decide. *Id.* at 944; *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The requirement of a clear statement means that silence or ambiguity as to the delegation of arbitrability is resolved in favor of court adjudication, in contrast to the general rule that ambiguities in arbitration agreements be resolved in favor of arbitration. *First Options*, 514 U.S. at 94–95.

Defendants contend that the employment agreement contains a clear and unmistakable agreement to delegate the question of arbitrability to the arbitrator. Specifically, Defendants point to the portion of the Arbitration Clause that states that "any controversy or claim…shall be settled by binding arbitration in accordance with the Rules of the American Arbitration Association." Dkt. # 1, Ex. 4. The American Arbitration Association ("AAA") Employment Arbitration Rules and Mediation Procedures state that "[t]he arbitrator shall have the power to *rule on his or her own jurisdiction*, including any objections with respect to the existence, scope or *validity* of the arbitration agreement." Dkt. # 1, Ex. 3 (emphasis added). Defendants argue that the incorporation of AAA rules, which explicitly delegate arbitrability questions to the arbitrator, constitutes a "clear[] and unmistakabl[e]" agreement between the parties.

Brennan, on the other hand, argues that the employment agreement does not clearly delegate the question of arbitrability to the arbitrator. He points to the "clear and unmistakable" delegation provision in *Rent-A-Center, West, Inc. v. Jackson,* _U.S._, 130 S. Ct. 2772 (2010), to support his argument that the delegation provision in the instant case falls short. Dkt. # 28, p. 7. Plaintiff is correct to note that the agreement in *Rent-A-Center*

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 8

included explicit language giving the arbitrator "exclusive authority" to resolve disputes as to the enforceability of the agreement, while the text of the agreement between Plaintiff and Defendant Opus Bank includes no such language. *See Rent-A-Center*, 130 S. Ct. at 2775.

The Ninth Circuit has not held in a published opinion that incorporating the AAA rules into an employment agreement constitutes a "clear and unmistakable" delegation. However, nearly every circuit to address the issue has concluded that this type of incorporation of AAA rules is a clear expression of delegation to the arbitrator. For example, the Eighth Circuit determined that an arbitration clause that stated "[a]ny controversy or claim . . . shall be settled . . . in accordance with the Commercial Rules of the American Arbitration Association . . . ." is a "clear and unmistakable" delegation of arbitrability to the arbitrator, as is established by AAA Rule 7(a), which gives the arbitrator "the power to rule on his or her own jurisdiction." *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877–79 (8th Cir. 2009).  Likewise, the Eleventh Circuit determined that language stating "arbitration shall be conducted in accordance with . . . the American Arbitration Association" clearly delegated the question of jurisdiction to the arbitrator, in accordance with AAA rules. *Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005). *See also Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205 (2d Cir. 2005) (agreement to settle dispute "in accordance with the Commercial Arbitration Rules of the American Arbitration Association" was "clear and unmistakable" delegation of arbitrability to arbitrator); *but see Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 777 (10th Cir. 1998) (agreement to settle dispute "in accordance with the Commercial Arbitration Rules of the American Arbitration Association" was not a "clear and unmistakable" delegation of arbitrability to arbitrator)**.**

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 9

In addition, though no published Ninth Circuit decisions speak to this issue, unpublished decisions by the Ninth Circuit and district courts in the Ninth Circuit are in line with the considerable majority of circuits: they find incorporation of AAA rules to be a clear and unmistakable delegation of arbitrability to arbitrators. *See Ariza v. Autonation, Inc.*, 317 F. App'x 662, 664 (9th Cir. 2009); *Aceves v. Autonation, Inc.*, 317 F. App'x 665, 666–67 (9th Cir. 2009); *see, e.g.*, *Jeld-Wen Master Welfare Benefit Plan v. Tri-City Health Care District*, No. 12CV197-GPC(RBB), 2012 WL 59444215, at *7 (S.D. Cal. Nov. 27, 2012) ("[B]ased on the parties agreeing to the rules under the AAA, the parties intended that the issue of arbitrability be decided by the arbitrator.").

Although Brennan identifies additional cases to support his argument that the Opus Bank agreement does not delegate arbitrability, these cases are unpersuasive. Plaintiff identifies California state court decisions suggesting (but not holding) that the incorporation of AAA rules is insufficient to establish "clear and unmistakable" delegation, *see Ajamian v. CantorC02e, L.P.*, 203 Cal. App. 4th 771, 790 (Cal. Ct. App., 2012). However, the FAA preempts state law on the issue of arbitrability. Thus, California state law is of little relevance to this issue.

The favored approach among circuit courts is to interpret the incorporation of AAA rules as a "clear and unmistakable" delegation of the question of arbitrability to the arbitrator. The Court therefore adopts this approach.

### a. Brennan's Challenge to the Arbitration Clause

Having found that the incorporation of AAA rules into the employment agreement constituted a clear and unmistakable delegation to the arbitrator, the Court must next address whether it or the arbitrator should decide Brennan's claim that the Arbitration

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 10

Clause is unconscionable. Plaintiff does not dispute that *Rent-A-Center* controls the question of whether his claims are properly before this court or an arbitrator. Dkt. # 16, p. 9. However, Plaintiff misapplies the case. Plaintiff contends that *Rent-A-Center* distinguishes between two types of challenges: challenges to an arbitration agreement, and challenges to an entire agreement (i.e. an agreement which includes an arbitration clause) as a whole. This is incorrect.[1] The Supreme Court in *Rent-A-Center* in fact distinguishes between two other types of challenges: challenges to the validity of the *delegation provision*, and challenges to the *arbitration agreement* as a whole. 130 S. Ct. at 2779. It is only when a party challenges the delegation provision itself that the district court intervenes. *Rent-A-Center*, 130 S. Ct. at 2778-79. ("[w]e require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene . . . . Unless [a party] challenged the delegation provision specifically, we must treat it as valid . . . and enforce it . . . leaving any challenge to the validity of the agreement as a whole for the arbitrator").

That Plaintiff has misapplied *Rent-A-Center* is further illustrated by his reliance on the Ninth Circuit's decision in *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006). Dkt. 36 at 10. In *Nagrampa*, the Ninth Circuit (rather than the arbitrator) heard a plaintiff's unconscionability claim as to the arbitration provision within a franchise agreement. 469 F.3d at 1263. Plaintiff argues that *Nagrampa* establishes precedent for this Court to do the same. Dkt. # 36, p. 10. However, as Defendant Opus Bank notes, neither

---

[1] Notably, the Supreme Court has distinguished between these two types of challenges in other cases. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the [entire] contract's validity is considered by the arbitrator in the first instance.") However, in *Buckeye*, the Court was not addressing a question of whether the arbitration agreement delegated questions of arbitrability to the arbitrator. This key difference makes *Buckeye* inapposite to the instant case.

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 11

party in *Nagrampa* was arguing that they had delegated the arbitrability question to the arbitrator. Dkt. # 24, p. 6.

Plaintiff mistakenly believes that, in order to have his dispute in front of the court rather than an arbitrator, he must argue that he is challenging just the arbitration agreement as unconscionable and not the entire employment agreement. In fact, he would need to challenge delegation of the power to determine validity of the arbitration clause as unconscionable, and not the entire arbitration agreement in order to be properly in front of the court. But, in Plaintiff's own words, he states that he is challenging the entire arbitration agreement. Dkt. # 28, p. 2 ("[w]hen properly construed, Section 16 [(the arbitration clause)] . . . is so pervaded by unconscionability as to be unenforceable in its entirety"); *see* Dkt. # 16, p. 9 ("Brennan does not challenge the Brennan Employment Agreement in its entirety . . . he is only challenging the arbitration requirement."); Dkt. # 36, p. 10 ("[the arbitration clause] is unenforceable, and should be severed from the otherwise valid Employment Agreement.").

The Supreme Court in *Rent-A-Center* is clear: if a party challenges the validity of the delegation provision itself, the court must hear that challenge. 130 S. Ct. at 2778. If a party challenges the validity of the arbitration agreement as a whole, only the arbitrator may hear that challenge. *Rent-A-Center*, 130 S. Ct. at 2779. There, the respondent argued procedural and substantive unconscionability as to the entire agreement to arbitrate. *Id.* at 2780. The Supreme Court decided that it need not consider such claims because none of respondent's unconscionability challenges were specific to the delegation provision. *See id.* The same is true here. Brennan challenges the entire arbitration clause as unconscionable. He does not allege that the incorporation of the AAA rules, which delegates the threshold

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 12

issue of validity to the arbitrator, was procedurally or substantively unconscionable. Accordingly, Plaintiff's challenge must be heard by the arbitrator.

### b. Opus Bank CEO Stephen Gordon

In addition to the claims Brennan alleged against Opus Bank, he has brought a separate claim against Stephen Gordon for violation of RCW 49.48.010. That statute requires an employer to pay employees who have been discharged or have voluntarily withdrawn from employment all wages due to him or her at the end of the established pay period. RCW 49.48.010.

Here, the arbitration agreement is broad in scope: it provides that "any controversy or claim arising out of this Agreement *or the Employee's employment with the bank or the termination thereof* . . . shall be settled by binding arbitration . . ." Dkt. # 9, p. 12 (emphasis added). Brennan's claim for failure to pay wages due requires first a finding that there were, in fact, wages due. The determination of whether Plaintiff is entitled to wages is at the heart of the dispute over the employment agreement. Plaintiff's claim against Gordon thus "aris[es] out of" Plaintiff's employment with and termination from Opus Bank, and is subject to the arbitration provision.

Under Ninth Circuit precedent, this Court has the discretion to decide whether to dismiss or stay pending arbitration in this case. *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 636, 639 (9th Cir. 1988) (finding that a district court acted within its discretion when it dismissed a party's claims, rather than stayed them). Because the Court finds that arbitration is the proper forum for Brennan's claims to be heard, it shall grant the motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) in favor of arbitration, and without prejudice.

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS - 13

## IV. CONCLUSION

Having considered the motions, the responses and replies thereto, the attached declarations and exhibits, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motions to Dismiss (Dkt. ## 9, 12) are GRANTED in favor of arbitration and without prejudice;

(2) The Clerk is directed to send a copy of this Order to all counsel of record.


DATED: June 5, 2013.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE